40 A.3d 1166 (2012)
425 N.J. Super. 277
James BROOKS, Appellant,
v.
BOARD OF TRUSTEES, Public Employees' Retirement System, Respondent.
No. A-3778-10T3
Superior Court of New Jersey, Appellate Division.
Submitted March 19, 2012.
Decided April 17, 2012.
*1167 Richard A. Bokma, Trenton, attorney for appellant.
Jeffrey S. Chiesa, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Danielle P. Schimmel, Deputy Attorney General, on the brief).
Before Judges PARRILLO, GRALL and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
In Richardson v. Board of Trustees, Police and Firemen's Retirement System, 192 N.J. 189, 192, 927 A.2d 543 (2007), our Supreme Court concluded that the tests it had adopted in 1985 for determining whether a work-connected event that results in permanent and total disability constitutes a "traumatic event" that qualifies a public employee for an accidental disability pension had "resulted in confusion and created a body of law with no rational core[.]" Consequently, the Court rejected those tests and adopted a new set of tests designed to exclude "disabilities that result from preexisting disease alone or in combination with work effort" from the award of accidental disability pensions, but "to continue to allow [accidental disability pensions] for the kinds of unexpected injurious events that had long been called `accidents.'" Ibid. The Court expressed its expectation that these new tests would "provide decision makers with a standard capable of consistent and uniform application." Id. at 192-93, 927 A.2d 543.
In this case, the Board of Trustees of the Public Employees Retirement System determined that a custodian who suffered a total and permanently disabling shoulder injury while carrying a 300-pound weight bench, when the other persons who were assisting him suddenly dropped their side of the bench, had not experienced a "traumatic event" under the new tests set forth in Richardson. We conclude that the Board misapplied those tests and therefore reverse the denial of the custodian's application for an accidental disability pension. We also conclude that the Administrative Law Judge's recommended decision in this case, which the Board adopted, reflects a *1168 need for further explanation of the Richardson tests, particularly the requirement that a work-connected event must be "undesigned and unexpected" to constitute a "traumatic event."

I.
Appellant James Brooks was employed by the Willingboro Board of Education as a custodian. One of his responsibilities, in addition to cleaning classrooms, was to move furniture and equipment around the school.
On July 24, 2008, appellant heard the principal over the loudspeaker direct someone to bring a flatbed truck to the front of the school. When appellant arrived in that area, he saw a group of teenage boys attempting to carry a large unwieldy weight bench weighing approximately 300 pounds into the school. Appellant had not previously seen this piece of equipment, which had been donated to the school, nor had he ever moved any other weight bench. Appellant told the boys to put down the bench while he tried to figure out how to get it into the gymnasium. The boys put down the bench, and appellant removed a center pole in the door to the gymnasium to make the entranceway large enough for the bench to fit through.
Appellant then asked two of the boys to help him tip the weight bench on its end and lift it onto the flatbed truck so it could be brought into the gymnasium. Appellant and the boys began this maneuver. However, when the bench was "halfway up," the boys, who were watching the football team exercise, dropped their side of the bench. Appellant heard his shoulder "snap" as the bench fell to the floor, which resulted in a total and permanent disability. Appellant said he did not drop his side of the bench when he saw the boys drop their side because one of his feet was directly underneath the bench.
Appellant subsequently applied for an accidental disability pension. By a letter dated January 21, 2010, the Board of Trustees of the Public Employees Retirement System denied appellant's application. The Board determined that appellant was "totally and permanently disabled as a direct result of [the July 24, 2008] incident." The Board also determined that this incident "was identifiable as to time and place." However, the Board denied appellant's application on the ground that the incident was not "undesigned and unexpected." The Board also indicated that because appellant was over the age of sixty, he qualified for service retirement benefits.
Appellant appealed the denial of his application, and the matter was referred to the Office of Administrative Law for a hearing. In accordance with the Board's initial decision, the only issue at the hearing was whether appellant's accident was "undesigned and unexpected." Appellant was the only witness.
The Administrative Law Judge (ALJ) to whom the case was assigned concluded in his recommended decision that appellant's accident was not "undesigned and unexpected" and thus he was not entitled to an accidental disability pension. In reaching this conclusion, he stated:
[A]lthough [appellant] professed not having any prior knowledge about this particular weight bench, his admission that he knew that it would require some particular maneuvering and, further, that he had formed the belief and an estimate regarding its weight suggests that he had sufficient knowledge about it in order to have successfully participated in the maneuver of getting the bench into the weight room.... Additionally, he had formed a conclusion that the teenagers were "doing it" (i.e., moving the weight bench) the wrong way. *1169 Thus, it appears that he realistically could have anticipated the consequences of any inappropriate moving of the bench, including the very distinct possibility that a couple of teenagers would not have been successful or worthy participants in lifting the bench. Further, it is entirely within the realm of such understanding that he knew that his foot could have been damaged had he not determined to hold onto the bench when the teenagers let go. Thus, he made an informed, albeit, quick decision to hold onto the bench. His swift reaction was an understandable consequence of the teenagers['] failings. Thus, in either case, [appellant] should have anticipated this as being an expected external event or the anticipated realistic consequence of the external event of moving the bench in the manner that he directed.
....
... Thus, ... [appellant's] unilateral management over that activity was well within the scope of his duties, the accident was well within being designed and expected (as well as predictable and consequential in light of all the factors which were brought to bear and enumerated by him) and is therefore not subject to an award of an accidental disability, in accordance with the requirements of Richardson.

The Board subsequently adopted the Board's recommended decision.

II.
As the ALJ recognized, this case is governed by Richardson, 192 N.J. 189, 927 A.2d 543, which revisited the tests for determining whether a work-connected event that resulted in the total and permanent disability of a public employee constituted a "traumatic event" that qualifies for an accidental disability pension.[1] The Court concluded based on a review of its own decisions and the decisions of this court decided under the three-part test set forth in Kane v. Board of Trustees, Police and Firemen's Retirement System, 100 N.J. 651, 663, 498 A.2d 1252 (1985), see Richardson, supra, 192 N.J. at 204-09, 927 A.2d 543, that the term "traumatic event" had "mistakenly been given a more and more parsimonious and idiosyncratic interpretation that is inconsistent with the legislative intent underlying the statute," id. at 211, 927 A.2d 543, and therefore, the Court's "prior jurisprudence [was] in need of a course correction[,]" id. at 210, 927 A.2d 543. To conform with the legislative intent, the Court concluded that a "traumatic event" should be understood to be "essentially the same as what we historically understood an accident to bean unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Id. at 212, 927 A.2d 543.
Consequently, the Court rejected the tests that had been adopted in Kane for determining whether a work-connected event constituted a "traumatic event" and held that "to obtain accidental disability benefits, a member [of the pension system] must prove:
1. that he is permanently and totally disabled;

*1170 2. as a direct result of a traumatic event that is
a. identifiable as to time and place,
b. undesigned and unexpected, and
c. caused by a circumstance external to the member (not the result of preexisting disease that is aggravated or accelerated by the work);
3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
4. that the disability was not the result of the member's willful negligence; and
5. that the member is mentally or physically incapacitated from performing his usual or any other duty."
[Id. at 212-13, 927 A.2d 543.]
The Court emphasized that a work-connected event occurring "during ordinary work effort" can satisfy these tests. Id. at 214, 927 A.2d 543. The Court gave examples of the kinds of accidents occurring during ordinary work efforts that could satisfy the tests:
A policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court.
[Id. at 214, 927 A.2d 543.]
The Court also indicated that a gym teacher who "trips over a riser" would have experienced a "traumatic event" under these tests. Id. at 213, 927 A.2d 543. Summarizing, the Court stated that "[t]he polestar of the inquiry is whether, during the regular performance of his job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214, 927 A.2d 543.
The accident that resulted in appellant's total and permanently disabling shoulder injury constituted a "traumatic event" under the tests set forth in Richardson. As the ALJ and Board properly acknowledged, appellant's accident was "identifiable as to time and place," was "caused by a circumstance external to the member"that is, the boys suddenly dropping their side of the weight bench, thus requiring appellant to carry a 300-pound object by himselfand, as far as the record reveals, was "not the result of preexisting disease that [was] aggravated or accelerated by the work." Id. at 212-13, 927 A.2d 543.
Furthermore, contrary to the conclusion reached by the Board and ALJ, the accident was clearly "undesigned and unexpected." Appellant was confronted with the unusual situation of a group of students attempting to carry a 300-pound weight bench into the school, and then, after appellant took charge of this activity, the boys suddenly dropping one side of the weight bench, placing its entire weight on appellant. Some of the examples of traumatic events cited by the Court in Richardson, such as a bookshelf falling on a librarian while re-shelving books, a social worker catching her hand in a car door while transporting a child to court, and a gym teacher tripping over a riser, involved more common and mundane work efforts than appellant's attempt to move the weight bench into the school.
The ALJ, whose recommended decision the Board adopted, reasoned that because appellant took charge of carrying the weight bench into the gymnasium with the assistance of the students, he should have anticipated the dangers involved in this work, including the risk that the bench would fall on his foot, and therefore, his accident was not "undesigned and unexpected." However, it could as well be said that a librarian who re-shelves books should reasonably anticipate that if this *1171 activity is not conducted properly, the book shelf could fall, that a social worker who transports a child to court should anticipate that if she is not careful getting into or out of her car, she could catch her hand in the car door, and that a gym teacher who does not look at the ground while walking should anticipate that he or she could trip on a riser or other object. Yet the Court recognized that such work-connected accidents could constitute "traumatic events." Thus, it is clear that an accident can be "undesigned and unexpected" under the Richardson tests even though it may be concluded in retrospect that the employee could have anticipated the risk of such an accident and taken steps to avoid it.
A public employee who is totally and permanently disabled as a direct result of a traumatic event occurring in the course of employment is disqualified from receiving an accidental disability pension only if the traumatic event resulted from the "member's willful negligence." N.J.S.A. 43:15A-43.[2] Consequently, the fact that an employee's simple negligence may have been a contributing cause of an accident is not disqualifying. An applicant for an accidental disability pension only has to show that he or she suffered a total and permanently disabling injury "as a direct result of an identifiable, unanticipated mishap," 192 N.J. at 213, 927 A.2d 543, even though the employee's conduct may have contributed to that mishap.
Accordingly, the Board's final decision is reversed and the case is remanded to the Board to award appellant an accidental disability pension.
NOTES
[1] Richardson involved the accidental disability provision of the statute governing Police and Firemen's Retirement System, N.J.S.A. 43:16A-7, which contains the same language as the accidental disability provision of the statute governing the Public Employees Retirement System, N.J.S.A. 43:15A-43, under which appellant's application was filed. The statutes governing the other public employee pension systems in this State contain similar provisions. See N.J.S.A. 53:5A-10 (State Police Retirement System); N.J.S.A. 43:7-12 (Prison Officers' Pension Fund); N.J.S.A. 18A:66-39 (Teachers' Pension & Annuity Fund).
[2] In Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29, 43 n. 2, 942, A.2d 782 (2008), the Court noted that "willful negligence has been defined as a `1. [d]eliberate act or deliberate failure to act; or 2. [s]uch conduct as evidences reckless indifference to safety; or 3. [i]ntoxication, operating as the proximate cause of injury.'" (quoting N.J.A.C. 17:4-6.5). Even if appellant's actions in the carrying of the weight bench could be found to have been negligent, they did not rise to the level of "willful negligence" under this definition.