**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1014-17T1

EBONY BROWN,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

    Respondent-Respondent.

_____

Argued January 28, 2019 – Decided February 11, 2019

Before Judges Sabatino, Haas and Sumners.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of Treasury, PFRS No. 3-92065.

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Christopher R. Meyer, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher R. Meyer, on the brief).

PER CURIAM

Ebony Brown appeals the September 12, 2017 final agency decision of the Board of Trustees of the Police and Firemen's Retirement System ("the Board") denying her claim for accidental disability retirement benefits under N.J.S.A. 43:16A-7. Because the undisputed facts demonstrate that Brown is legally entitled to such benefits, we reverse.

Brown was employed as a senior corrections officer in Trenton State Prison, and was working on the female unit known as "IFF" on the night in question. The IFF area has four tiers, consisting of two top tiers and two lower tiers. Each tier has eight inmate cells.

The access to each tier was through a large gate equipped with a master lock. According to Brown, the gate was about three feet wide and about ten feet high. After unlocking the lock with a key, Brown would remove the lock and slide the gate to the side. As described by Brown, the gate was "not too heavy" and ordinarily "very easy to slide." The gate did not typically require much force to open. According to Brown, the gate normally "would just coast" once it was pulled.

Brown's responsibility on the night shift was to ensure the security of the inmates while they were asleep. This required her to "walk the tiers constantly"

A-1014-17T1

to "make sure every inmate [was] there." Her shift started at 10:00 p.m., and she checked on the inmates every hour and a half.

At about 2:00 a.m. on July 1, 2008, Brown was injured while making her rounds on one of the tiers. She used the gate in question, having done so in at least "a couple of rounds" earlier that shift. Brown opened up the gate, performed the inmate check, and returned to the gate. Attempting to close the gate, Brown pulled it towards the right when it suddenly stopped. Once the gate stopped, Brown "heard a pop in [her] hand and [she] let [the gate] go." Her right wrist was injured in the process.

Adhering to standard procedures, Brown promptly reported her injury to her supervisor. The supervisor's incident report was consistent with Brown's testimony in this case. As described in the report, the gate had suddenly "jammed" when Brown was pulling it closed, and she injured her wrist when the gate abruptly stopped moving. The report further documented that Brown's right wrist was "visibly swollen." In addition, the gate was "found to be very difficult to open." A maintenance work order was submitted to inspect and address the door.

Nearly three years later in June 2011, Brown reinjured her right wrist while restraining an inmate. The Board acknowledges that this second wrist

injury, had it not been preceded by the July 2008 original injury, would qualify Brown for accidental disability benefits. However, because the parties agree that the June 2011 injury aggravated the pre-existing injury, Brown needs to establish that the July 2008 jammed-gate incident qualifies under the criteria for accidental disability retirement benefits.

Brown retired on March 1, 2016. Several weeks later, she timely filed in April 2016 a claim for accidental disability retirement benefits. The Board initially denied Brown's application, instead providing her only with ordinary disability retirement benefits. The Board's rejection was based on its initial determination that the July 1, 2008 injury was not caused by an "undesigned and unexpected" incident. Nonetheless, the Board determined that Brown satisfied all of the other requirements of the accidental disability retirement program.

After Brown contested the Board's initial denial, a fact-finding hearing was conducted in the Office of Administrative Law. Brown was the only witness who testified. The administrative law judge ("ALJ") who presided over the hearing accepted Brown's description of the July 1, 2008 incident and adopted that factual account in his decision. However, the ALJ agreed with the agency that the incident was not "undesigned and unexpected." The ALJ stated in this

regard that "[o]ne should anticipate that a sliding gate would jam or become inoperable, this is part of the usual job duties of anyone operating a sliding gate."

Brown filed with the Board exceptions to the ALJ's decision. After considering those exceptions, the Board again concluded that Brown is ineligible for accidental disability retirement benefits. This appeal followed.

As the parties argue, the pivotal legal issue before us is whether or not the July 1, 2008 jammed-gate incident was an "undesigned and unexpected" event. This requirement is an element of eligibility as set forth in the Supreme Court's seminal opinion in Richardson v. Board of Trustees, Police and Firemen's Retirement System, 192 N.J. 189, 212-13 (2007), clarifying the meaning of the term "traumatic event" under N.J.S.A. 43:16A-7(1). As delineated in Richardson, a claimant for accidental disability retirement benefits must establish:

> (1) that he is permanently and totally disabled;
>
> (2) as a direct result of a traumatic event that is
>     a. identifiable as to time and place,
>     b. undesigned and unexpected, and
>     c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work).
>
> (3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;

5

(4) that the disability was not the result of the member's willful negligence; and

(5) that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Ibid. (emphasis added).]

The Court explained, "[t]he polestar of the inquiry is whether, during the regular performance of his job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214.

The Court provided in Richardson the following examples of the kinds of accidents occurring during ordinary work efforts that would qualify for accidental disability retirement benefits: "A policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court." Ibid.

The Court also provided counter-examples of situations that would not qualify for these benefits under a certain set of facts, but would qualify under a different set of facts. For example, a police officer who has a heart attack while chasing a suspect would not qualify because "work effort, alone or in combination with pre-existing disease, was the cause of the injury." Id. at 213.

A-1014-17T1

However, the Court explained that "the same police officer [who was] permanently and totally disabled during the chase because of a fall, has suffered a traumatic event." Ibid. (emphasis added). Likewise, a gym teacher who develops arthritis "from repetitive effects of his work over the years" would not qualify as suffering a traumatic event; however, if the same gym teacher trips over a riser and is injured, that injury would satisfy the standard. Ibid.

Our published decisions have illustratively applied this "undesigned and unexpected" legal standard. For example, in Moran v. Board of Trustees, Police & Firemen's Retirement System, 438 N.J. Super. 346, 348 (App. Div. 2014), we reversed the Board's determination and held that a firefighter who suffered a disabling injury while kicking down the door of a burning building – because the tools normally used by firefighters to break down doors had not yet arrived – was an "undesigned and unexpected" event. Similarly in Brooks v. Board of Trustees, Public Employees' Retirement System, 425 N.J. Super. 277, 279 (App. Div. 2012), we reversed another pension agency's denial of accidental disability retirement benefits to a school custodian who injured his shoulder moving a 300-pound weight bench into the school. We found the custodian's accident was clearly "undesigned and unexpected" because he had been confronted with an unusual situation of students attempting to carry the heavy bench into the school,

took charge of the activity, and the students suddenly dropped their side of the bench, placing its entire weight on the custodian. Id. at 283.

Here, the Board also erred in applying an unduly restrictive notion of an "undesigned and unexpected" event to Brown's July 1, 2008 incident. Brown had no reason in advance to anticipate that this particular sliding gate would suddenly jam. As she testified, the gate had smoothly slid on its track in the past. There is no evidence in the record of prior incidents in which the gate jammed or malfunctioned. The Board concedes the record does not show that Brown continued tugging on the gate once it became stuck. This was simply an unexpected fluke, and clearly an undesigned mishap.

Absent evidence of known prior malfunctions, employees reasonably should be able to expect that equipment supplied to them in the workplace will operate properly and not injure them. That is especially true in a jail or prison environment where safety and security concerns are elevated. The discrete circumstances here meet the eligibility criteria of Richardson.

We recognize our courts owe deference to the Board and other pension agencies in their implementation of the retirement benefits statutes. Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206 N.J. 14, 27 (2011). Even so, we are not "bound by an agency's interpretation of a statute or its determination of

a strictly legal issue, particularly when that interpretation is inaccurate or contrary to legislative objectives."  Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 418-19 (2018) (internal citations omitted).  Instead, "we review de novo the Board's interpretation of N.J.S.A. 43:16A-7(1) and our case law."  Id. at 419.  In this instance, the Board reached an incorrect legal conclusion in applying the law to the record facts.[1]  We therefore hold that Brown is eligible for the accidental disability retirement benefits.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] We respectfully decline to follow the outcomes in certain unpublished opinions that upheld the denial of accidental disability retirement benefits in door-closing or gate-closing contexts that arguably share some characteristics with the present case.  Those opinions are non-precedential and we do not cite or reflexively follow them.  R. 1:36-3.