**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2061-17T2

DIONISIO RAMOS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted March 4, 2019 – Decided April 3, 2019

Before Judges Messano and Fasciale.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-10-308765.

Feeley & LaRocca, LLC, attorneys for appellant (Pablo N. Blanco, of counsel and on the brief; John D. Feeley, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Juliana C. DeAngelis, Deputy Attorney General, on the brief).

PER CURIAM

Pursuant to N.J.S.A. 43:15A-43, a member of the Public Employees' Retirement System (PERS) is eligible for accidental disability retirement if he "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties . . . ." (emphasis added). In Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 212-13 (2007), interpreting N.J.S.A. 43:16A-7, a similar provision of the Police and Firemen's Retirement System, the Court held that to obtain accidental disability benefits a member must prove:

> 1. that he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

We have held the same test applies under the PERS statutory scheme. Brooks v. Bd. of Trs., Pub. Emps.' Ret. Sys., 425 N.J. Super. 277, 281 (App. Div. 2012).

Appellant Dionisio Ramos was employed by the City of Newark as a truck driver. In February 2014, his snowplow struck a "concrete barrier or wall" obscured by snow. Ramos injured his right thigh and back and received epidural injections to relieve pain caused by a herniated disc. He returned to work.

However, in October 2014, when he again experienced pain, Ramos underwent a microdiscectomy to repair the herniation. His treating doctor examined Ramos in December and concluded he was progressing well and could return to work in six-to-eight weeks. Sometime between then and January, however, Ramos slipped on some ice, twisting his back in the process. Another MRI revealed a "recurrent herniated disc" at the same level. Two months later, Ramos underwent spinal fusion surgery and never returned to work.

Ramos applied for accidental disability benefits. The Board of Trustees (the Board) of PERS determined that Ramos satisfied most of the standards set forth in Richardson. However, the Board concluded the disability was "the result of a pre-existing disease alone or a pre-existing disease that is aggravated

3

or accelerated by the work effort." It awarded Ramos ordinary disability benefits. He appealed, and the matter was transferred to the Office of Administrative Law as a contested case.

The Administrative Law Judge considered the testimony of Ramos, Dr. David Weiss, a board-certified orthopedist called as a witness by Ramos, and Dr. Andrew Hutter, an orthopedic surgeon who testified on behalf of the Board. The ALJ made factual findings, which the Board later accepted and adopted.

The ALJ found the facts we outlined above. She also found that Ramos did not need fusion surgery prior to the January 2015 slip on ice, and that, while spontaneous recurring disc herniations may occur in between nine-and-twenty-one percent of the cases, trauma can cause a recurrent herniation. The ALJ framed the "issue" as "whether Ramos['s] disability is the direct result of the February 2014 snow[]plow accident or the twisting injury of January 2015." The ALJ distinguished the case from the Court's decision in Gerba v. Board of Trustees, Public Employees' Retirement System, 83 N.J. 174 (1980), and our decision in Petrucelli v. Board of Trustees, Public Employees' Retirement System, 211 N.J. Super. 280 (App. Div. 1986), noting those cases dealt with the effect of workplace accidental injuries upon pre-existing conditions or injuries.

4

Here, the issue was simply whether the earlier snowplow accident caused Ramos's disability.

The ALJ noted the doctors' differing opinions but found Dr. Hutter "more persuasive." She concluded:

> Prior to the twisting injury . . . , [Ramos] was improving and would have been able to return to work according to [his treating doctor]. The evidence and testimony did not show that the February 2014 snow[]plow accident was the essential significant or substantial contributing cause of the disability because Ramos was recovering from the October 2014 surgery and it was anticipated that he would return to work in six[-]to[-]eight weeks . . . .

The ALJ affirmed the Board's denial of accidental disability benefits, and the Board, in turn, adopted the ALJ's decision in its final administrative decision. This appeal followed.

Unlike several other decisions that involve a workplace injury aggravating a pre-existing injury or condition, Ramos argues this appeal presents a "purely legal issue" never addressed before, i.e., "whether a public employee who sustains a subsequent aggravation of an injury initially suffered in a workplace accident should . . . be denied an accidental disability pension." We agree this case presents factual circumstances converse to those in most reported decisions.

5

However, we find nothing particularly unique about the legal analysis required to resolve this appeal. We affirm.

Our review of the Board's decision is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). We will sustain the Board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "A reviewing court 'must be mindful of, and deferential to, the agency's expertise and superior knowledge of a particular field.'" Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)). "Moreover, '[a] reviewing court may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Ibid. (alteration in orginal) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). We are not, however, bound by the agency's interpretation of a statute, which, along with relevant case law, we review de novo. Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 418-19 (2018).

"[T]he choice of accepting or rejecting testimony from witnesses resides with the administrative agency, and so long as that choice is reasonably made it

is accorded deference on appeal." In re Young, 202 N.J. 50, 70-71 (2010) (quoting Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 588 (2001)).

Here, the ALJ and the Board found Dr. Hutter more credible. His opinion was that Ramos's spine was "compromised by the initial injury and was improving after he had surgery to correct the weakened condition." According to Dr. Hutter, Ramos would have had the same treatment after the January 2015 twisting injury — spinal fusion surgery — even if the first trauma — the snowplow accident — had not occurred. Dr. Hutter opined that the second incident was the cause of Ramos's recurrent disc herniation. We defer to the Board's acceptance of these opinions.

In order to prove his eligibility for accidental disability pension benefits, Ramos needed to prove that his disability was the "direct result of [the 2014] traumatic event." Richardson, 192 N.J. at 212.

> [T]he purpose behind the Legislature's change of the term "result" to "direct result" was "intended to impose a stringent test of medical causation and . . . that the trauma . . . must at the very least be the essential significant or the substantial contributing cause of the disability."
>
> [Kasper v. Bd. of Trs. of the Teachers' Pension & Annuity Fund, 164 N.J. 564, 577 (2000) (alteration in original) (quoting Korelnia v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 163, 170 (1980))].

Having accepted Dr. Hutter's opinions, the Board's conclusion that Ramos's disability was not the "direct result" of the 2014 snowplow incident naturally followed. Under our highly deferential standard of review, we find no basis to disturb that decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2061-17T2