**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3491-17T2

MICHAEL LUISI,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted April 4, 2019 – Decided June 24, 2019

Before Judges Whipple and Firko.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-10-1108867.

Alterman & Associates LLC, attorneys for appellant (Jeffrey S. Ziegelheim, Stuart J. Alterman and Timothy J. Prol, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney

General, of counsel; Austin J. Edwards, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner, Michael Luisi, appeals from the Board of Public Employees' Retirement System's (Board) February 26, 2018 denial of his application for accidental disability retirement benefits. We affirm.

Petitioner was a laborer for the City of Brigantine. On April 20, 2010, his supervisor directed him to transport concrete mix to a stone recycling center. This was the first time petitioner drove this particular dump truck, and, when he arrived at the recycling center, he noticed the truck's tailgate locking mechanism (the claws) was stuck. A recycling center employee helped him disengage the claws and appellant was able to deliver the concrete. Petitioner informed his supervisor of the problem, and his supervisor used a backhoe to bend the rods attached to the claws. Thinking the claws were fixed, petitioner took another load of concrete to the recycling center.

Back at the recycling center, petitioner raised the truck's bed and the left set of claws broke off, which caused the left side of the truck's tailgate to fall off. Recycling center employees refused to help petitioner lift the tailgate back onto the truck so petitioner decided to do it himself. The tailgate weighed, in petitioner's estimation, about "five-to-six hundred pounds." Petitioner tried to

A-3491-17T2

lift the tailgate several times, and, on the final attempt, felt a "pop" in his shoulder and two "pops" in his back. Petitioner suffered a cerebrovascular accident and traumatic back and shoulder injuries.

Petitioner applied for and was denied ordinary and accidental disability benefits. Petitioner had suffered a number of work-place injuries over the years. He also suffered from back and shoulder pain both before and after the 2010 accident and underwent a total shoulder replacement in 2012. The Board found that petitioner was orthopedically disabled, but was ineligible for ordinary disability benefits because he had yet to complete the minimum number of years of service. His accidental disability benefits claim for the 2010 injury was denied because the Board found the accident was not "undesigned and unexpected" and was the result of a pre-existing disease.[1] Petitioner appealed to an administrative law judge (ALJ).

The ALJ disagreed with the Board. After hearing testimony from two physicians who examined appellant, the ALJ found petitioner was totally and permanently disabled, and his 2010 injury was not caused by a pre-existing

---

[1] Petitioner's accidental disability benefits claim pertaining to a 2002 workplace injury was denied because it was filed out-of-time. On appeal, petitioner only contests the denial of benefits related to his 2010 injury.

disease. Those findings were not disputed by the Board and are not an issue on appeal.

What is an issue in this appeal is the ALJ's finding the event was "undesigned and unexpected" because petitioner was never trained how to operate that particular truck and petitioner thought his supervisor fixed the tailgate. The Board overturned this finding because there was no "external happening" or "unanticipated mishap" that caused petitioner's injury. Rather, the Board found petitioner "was injured doing exactly what he intended to do—pulling and lifting a truck tailgate." Thus, the Board denied petitioner's claim for accidental disability benefits. This appeal followed.

We will not overturn an administrative action in the absence of a "showing that it is arbitrary, capricious or unreasonable, or that it lacks fair support in the record." Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223-24 (2009) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). An agency's findings of fact "are considered binding on appeal when supported by adequate, substantial and credible evidence[.]" In re Taylor, 158 N.J. 644, 656 (1999) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). However, we owe no deference to an administrative agency's

interpretation of legal precedent. Bowser v. Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 171 (App. Div. 2018).

N.J.S.A. 43:15A-43 affords additional disability benefits to state workers who become "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties[.]" In Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 212-13 (2007), our Supreme Court created a five-part, conjunctive test to determine when an injury was a direct result of a traumatic event. An applicant must prove:

> (1) that he is permanently and totally disabled;
>
> (2) as a direct result of a traumatic event that is
>
>> (a) identifiable as to time and place,
>>
>> (b) undesigned and unexpected, and
>>
>> (c) caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> (3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> (4) that the disability was not the result of the member's willful negligence; and

A-3491-17T2

(5) that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Ibid.]

At issue here is whether petitioner's injury was a traumatic event that was "undesigned and unexpected" and "caused by a circumstance external" to him. We agree with the Board that it was not.

Appellant asks us to take a broad view of an undesigned and unexpected event and argues as long as the event is a "mere happening occurring during an ordinary work effort," it is undesigned and unexpected. Appellant compares his case favorably to Brooks v. Board of Trustees, 425 N.J. Super. 277 (App. Div. 2012), where a 300 pound weight bench dropped on a school custodian; Moran v. Board of Trustees, Police & Firemen's Retirement System, 438 N.J. Super. 346 (App. Div. 2014), where a firefighter was injured after breaking down a door to a burning building; and Mount v. Board of Trustees, Police & Firemen's Retirement System, 233 N.J. 402 (2018), where a hostage negotiator experienced a traumatic event.

Richardson defined "external" to mean an influence outside the actor's control or unrelated to a pre-existing condition. 192 N.J. at 212 (discussing the idea of an external force as an "external influence or cause outside the member

6

himself. . . . [N]ot an affirmative requirement of extreme violence."). Richardson provided several examples of external events, each of which would be traumatic under the statute: "A policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court." Id. at 214.

In Brooks, a school custodian and several students were carrying a 300-pound weight bench when the students suddenly dropped it. 425 N.J. Super. at 279-80. The custodian suffered a shoulder injury and we concluded he was entitled to accidental disability benefits. Id. at 285. We explained the custodian's injury was caused by an external force (the weight bench) and by an unintended event (the students suddenly dropping it). Id. at 283-84. Even though it was arguably foreseeable the students were not reliable helpers, "the fact that an employee's simple negligence may have been a contributing cause of an accident is not disqualifying." Id. at 284.

In Moran, a firefighter was injured after using his body to break down a door to a burning building because he heard voices yelling from inside. 438 N.J. Super. at 349-50. The firefighter was part of an engine company, whose job was to take hoses to the burning building; whereas members of the truck company

had equipment to break down doors. Ibid. However, the truck company was late and the firefighter felt it was his duty, despite not having the proper equipment, to attempt a rescue. Id. at 350. We determined the firefighter's injury was caused by an undesigned and unexpected event because the firefighter faced unusual circumstances, such as the truck company's delay, the presence of victims in the building, and the lack of proper tools to break down the door. Id. at 354. "While this was not a classic 'accident' in the sense that the house did not collapse on [the firefighter], nor did he trip while carrying a firehose . . . the injury was . . . caused by an event, or series of events, 'external' to [the firefighter]." Ibid.

One of the applicants in Mount was a detective and FBI-trained hostage negotiator performing work for a township police department. 233 N.J. at 413. Hostage negotiators are trained to know a special weapons and tactics (SWAT) team may, without warning, elect to confront a hostage-taker. Id. at 413-14. During a call, the detective tried to coax a hostage-taker into laying down his weapon. Id. at 414-15. Without warning, a SWAT team entered the house and killed the hostage-taker while still on the phone with the detective. Id. at 416. The experience led to the detective's diagnosis with post-traumatic stress disorder. Ibid. Our Supreme Court held the event was neither undesigned nor

unexpected, because the detective, based on his training, should have known it was possible (if not probable) the SWAT team would kill the hostage-taker. Id. at 430-31.

The common thread through these examples is that an accident is an event caused by an action, force (literal or circumstantial), or object outside the injured's control. This definition necessarily excludes injuries caused by the actor's pure physical exertion. Here, petitioner was doing exactly what he intended to do by lifting the tailgate and was injured by a force within his own control. Therefore, his injury was not caused by an undesigned or unexpected external circumstance.

This case is distinguishable from Brooks and the examples provided in Richardson because, in each of those cases, a force or object outside the actor's control caused the injury. Although both petitioner and the custodian in Brooks were injured lifting heavy objects, the custodian sustained an injury because the students dropped their end of the weight bench. Here, petitioner was the only person attempting to lift the tailgate. Moreover, petitioner already knew the tailgate was broken and how heavy it was before he was injured.

Petitioner's reliance on Moran and Mount is not persuasive. The defective tailgate did not present an unusual set of circumstances like in Moran. Petitioner

A-3491-17T2

faced no dire consequences if he did not fix the tailgate and was under no duty to attempt to fix it by himself. <u>Mount</u> was premised on the fact that the detective should have expected the hostage-taker to be killed. Here, petitioner did not need to be specially trained to know the tailgate was too heavy to lift, especially considering he made several unsuccessful attempts to lift it before sustaining an injury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3491-17T2