**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1054-24

ALBERT ANDERSON,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM OF
NEW JERSEY,

     Respondent-Respondent.

_____

Argued May 13, 2026 – Decided June 29, 2026

Before Judges Berdote Byrne and Jablonski.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx6395.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader PC, attorneys; Samuel M. Gaylord, on the brief).

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Nels J. Lauritzen, Legal Affairs Deputy Director, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Albert Anderson appeals from a final agency decision by the Board of Trustees ("Board"), Police and Fireman's Retirement System of New Jersey ("PFRS") that found he was not entitled to accidental disability retirement benefits ("ADRB") under N.J.S.A. 43:16A-7(1). In doing so, the Board adopted the initial decision of the Administrative Law Judge ("ALJ"), finding Anderson's disability claim was not "undesigned and unexpected." We affirm.

I.

Anderson served as a police officer with the Woodbury City Police Department for eighteen years, following two years of prior service with the Wildwood Crest Department. He successfully completed police academy training, where he learned arrest procedures and use of force, and consistently met the physical and in-service training requirements. He was, however, noted to have a history of cardiac issues, especially atrial fibrillation,[1] and his condition was previously treated with cardiac ablation.

---

[1] Atrial fibrillation, or an irregular heartbeat, is the most common form of heart arrhythmia and affects more than two-million people a year. See Prystowsky, E.N., Perspectives and Controversies in Atrial Fibrillation, 82 Amer. Jour. of Cardiology, (4A), 3I-8I, 3I (1998). This condition is evidenced when one or both atria, the upper chambers of the heart, quiver at faster-than-normal and/or erratic rates. Stedman's Medical Dictionary, 26th Edition (1995).

A-1054-24

On April 17, 2018, while working a 6:00 a.m. to 6:00 p.m. shift, Anderson responded to a reported robbery at a local gas station and interviewed the victim. The victim explained that earlier that day he offered a reward to two males for the return of his stolen bicycle. When the individuals returned the bicycle, they demanded additional money. When the victim refused, he was assaulted by the suspects who fled the scene.

The victim provided Anderson and other responding officers with descriptions of the suspects and identified one of the perpetrators by name. Anderson then observed an individual matching that description fleeing through backyards. Anderson pursued the suspect and apprehended him after a brief foot chase and following a physical struggle.

During it, Anderson experienced severe pain and a heavy sensation in his chest. He immediately notified his supervisor of this medical condition and was transported to the hospital. Since that date, he was unable to return to work because he could not meet the physical requirements of his position. He currently remains under medical care.

Anderson filed for ADRB and asserted that as a direct result of the foot pursuit of the suspect, he suffered atrial fibrillation which prevented him from performing his regular or assigned duties. The Board denied Anderson's

3

application for ADRB and awarded ordinary disability retirement benefits instead finding Anderson was "totally and permanently disabled from the performance of his regular and assigned job duties. . . ." It also concluded the "disability claim is the result of a pre-existing disease alone or a pre-existing disease that is aggravated or accelerated by the work effort." Therefore, the Board determined the incident that caused Anderson's disability was "not undesigned and unexpected" and "[did] not qualify as a traumatic event that would entitle [him] to [ADRB]."

Anderson appealed and the matter was referred to the Office of Administrative Law for a hearing where Anderson was the only witness to testify. The ALJ affirmed the Board's denial. The Board later adopted the ALJ's decision as a final administrative determination which Anderson now appeals.

He contends his injury occurred during a violent, unplanned confrontation that was both undesigned and unexpected, and not part of his routine duties. He asserts that this incident qualifies as a traumatic event, entitling him to receive ADRB.

II.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re

Herrmann, 192 N.J. 19, 27 (2007)); see also Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27).

"Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." Worthington v. Fauver, 88 N.J. 183, 204-05 (1982) (alteration in original) (quoting Bayshore Sewerage Co. v. Dep't Env't Prot., 122 N.J. Super. 184, 199 (Ch. Div. 1973)). When we consider whether an agency's decision is arbitrary, capricious, or unreasonable, we examine: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the "agency clearly erred in reaching [its] conclusion." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)). To determine whether an agency's

decision is supported by substantial evidence, we may not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

"Like all of the public retirement systems, the PFRS includes provisions for the grant of ordinary and accidental disability benefits." Mount v. Bd. of Trs., Police and Fireman's Ret. Sys., 233 N.J. 402, 419 (2018) (quoting Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42 (2008)). "A PFRS member can qualify for ordinary disability benefits if [the member] is disabled for any reason; the disability need not have a work connection." Ibid. However, "[t]o be eligible for greater benefits under the accidental disability provision . . . a PFRS member must satisfy N.J.S.A. 43:16A-7(1)'s more rigorous requirements." Ibid.

N.J.S.A. 43:16A-7 specifically sets forth the requirements for a PFRS member to receive ADRB:

> Any member may be retired on an accidental disability retirement allowance, provided that the medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties.

6

[N.J.S.A. 43:16A-7(a)(1).]

To establish entitlement to ADRB, an applicant must prove:

1. That [they are] permanently and totally disabled;

2. As a direct result of a traumatic event that is

   a. Identifiable as to time and place,

   b. Undesigned and unexpected, and

   c. Caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. That the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. That the disability was not the result of the member's willful negligence; an[d]

5. That the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson v. Board of Trs., Police and Firemen's Ret. Sys., 192 N.J. 189, 212-213 (2007).][2]

---

[2] The Court also discussed other factual scenarios to provide guidance. For example, "a police officer who has a heart attack while chasing a suspect has not experienced a traumatic event," because there, "work effort, alone or in combination with pre-existing disease, was the cause of the injury." Richardson, 192 N.J. at 213. Conversely, "the same police officer, permanently and totally disabled during the chase because of a fall, has suffered a traumatic event." Ibid. Additionally, "the gym teacher who develops arthritis from the repetitive effect of his [or her] work over the years has not suffered a traumatic event," as "[his

A-1054-24

The Court held the "undesigned and unexpected" prong requires either "an unintended external event" or "an unanticipated consequence" of an intended event that "is extraordinary or unusual in common experience." Id. at 201 (quoting Russo, 62 N.J. at 154). "Injury by ordinary work effort," when "the employee was doing [their] usual work in the usual way" does not qualify. Ibid. (quoting Russo, 62 N.J. at 154). In short, "work effort itself . . . cannot be the traumatic event." Id. at 211.

The Court emphasized the "polestar" of the inquiry was "whether, during the regular performance of [the petitioner's] job an unexpected happening, not the result of pre-existing disease along or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214.

The determination of whether an incident is undesigned and unexpected cannot "[be] resolved merely be reviewing the member's job description and the scope of his or her training." Mount, 233 N.J. at 427. While "those considerations may weigh strongly for or against an award of accidental

---

or her]disability is the result of a degenerative disease and is not related to an event that is identifiable as to time and place." Ibid. "On the contrary, the same gym teacher who trips over a riser and is injured has satisfied the standard." Ibid.

A-1054-24

disability benefits," a reviewing court "must carefully consider not only the member's job responsibility and training, but all aspects of the event itself." Ibid.

The ALJ found, and the Board agreed, that Anderson experienced cardiac issues while attempting to detain, restrain, and handcuff the suspect on his own, which he successfully accomplished. Although Anderson claims that the incident was undesigned and unexpected because of the suspect's refusal to comply and his combative behavior, given Anderson's training, years of experience, and the demands of his position, the incident cannot, under our jurisprudence, be considered undesigned and unexpected.

Richardson and subsequent cases clarify that ordinary work effort, even if strenuous, does not constitute a traumatic event unless it is accompanied by an unintended external event or an extraordinary consequence. 192 N.J. at 202. See Moran v. Bd. of Trs., Police & Firemen's Ret. Sys., 438 N.J. Super. 346, 351 (App. Div. 2014) (A firefighter's injury caused by unusual circumstances including trapped victims and a lack of assistance and equipment represented an undesigned and unexpected event to support the award of ADRB.); Brooks v. Bd. of Trs., Dep't of Treasury, 425 N.J. Super. 277, 283 (App. Div. 2012) (A custodian experienced an undesigned and unexpected accident when a weight

bench dropped on its side and caused the full weight of the equipment to fall on him.).

In contrast, Anderson's injury stemmed from a pre-existing condition for which he had previously received medical intervention that may have been exacerbated by his routine job activity, consistent with his responsibilities as a police officer. Pursuit and restraint of fleeing and combative suspects were routine parts of Anderson's duties despite each incident presenting unique and unpredictable challenges. Nevertheless, Anderson was fully trained and prepared for these contingencies. There was nothing out of the norm, extraordinary, or unusual about the activity that ultimately led to Anderson's disability. In sum, the facts neither demonstrate an intended external event nor an extraordinary circumstance that might be considered unusual and that would otherwise permit an ADRB award.

We are satisfied the Board's final determination relied on credible evidence in the record and was not arbitrary, capricious, nor unreasonable. The ALJ's findings, adopted by the Board, were fully supported by substantial credible evidence in the record and according to the pertinent jurisprudence. We decline to disturb the Board's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1054-24